BERNARD BRONNER AND SECKEL BRONNER, APPEL-
LANTS, v. MARTHA A. LOOMIS AND THE ROME
SAVINGS BANK, RESPONDENTS.

*Order — vacated by a failure to file it in the proper county within ten days — Code,
§ 282 — who a bona fide mortgagee within.*

October 12, 1874, the plaintiffs recovered a judgment against one Loomis in an
action triable in Onondaga county, from which Loomis took an appeal and gave the
requisite security to stay proceedings during the pendency thereof. In Janu-
ary, 1877, Loomis applied to the Rome Savings Bank for a loan of $1,000 on
premises in Oneida county, on which the bank then held a mortgage for $3,000,
and which were also incumbered by a second mortgage for $400, and the
plaintiffs' judgment, a transcript of which had been filed in that county. In
pursuance of an agreement between the parties an order was obtained at a
Special Term held in Rome, Oneida county, on March 27, 1877, releasing the
said premises from the lien of the judgment. Neither this order nor the
papers on which it was granted were ever filed in Onondaga county.
Thereafter and more than ten days from the granting of the order the savings
bank, on production of a certified copy of it, paid off the $400 mortgage, and
paid the balance of the $1,000 to Loomis, taking from him a mortgage for
$1,000. Upon a motion by plaintiffs to vacate this order, their judgment
having been affirmed on appeal.
*Held,* that the motion was properly granted; that as the order and papers
had not been filed in the office of the clerk of the county of Onondaga within
ten days from the time it was granted, it thereby became vacated and that the
lien of the judgment was prior to that of the mortgage.
*Semble,* that in a proper proceeding the $400 mortgage would be reinstated
and its lien revived, to protect the savings bank to the amount thereof.
The term *bona fide* mortgagee, in section 282 of the Code, means one who has
taken his mortgage without any design to defraud the plaintiffs in the judg-
ment, or anybody else, and upon some *bona fide* consideration, either present
or past.

APPEAL from an order made at the Oswego Special Term
vacating as irregular an order heretofore made, except as against
a mortgage for $1,000 held by the Rome Savings Bank. The
appeal was from that part of the order which allowed the former
order to stand as regards the $1,000 mortgage.

*William C. Ruger*, for the appellants.

*B. J. Beach*, for the Rome Savings Bank.

TALCOTT, P. J. :

This is an appeal from an order made by Mr. Justice MULLIN at the Oswego Special Term, setting aside an order made in this case on the 27th of March, 1877, as irregular, except as against a mortgage of $1,000, dated January 24, 1877, owned by the Rome Savings Bank. The appeal is only from that part of the order which allows the order to stand, so far as the mortgage to the Rome Savings Bank is concerned.

The facts, so far as necessary to be considered, are as follows : The plaintiffs Bronners, on the 12th day of October, 1874, recov-. ered a judgment against Martha A. Loomis in this court on the report of a referee for $466.55. The place of trial of the said action was the county of Onondaga. On or about the 20th of October, 1874, the defendant Loomis appealed from that judg-ment to the General Term. Upon such appeal the defendant gave security in the usual form to stay the proceedings in the action, signed by herself and two sureties, each of which sureties justified in the sum of $1,000. The Rome Savings Bank already held a mortgage on certain real estate in the county of Oneida, executed to it by the said Martha A. Loomis for $3,000, and in January, 1877, she applied to the trustees of the said savings bank for a further loan of $1,000 to be secured by her bond and a further mortgage of the same premises embraced in the $3,000 mortgage. On examining the certificate of title to the said real estate two other incumbrances subsequent to the $3,000 mortgage were discovered, namely, a mortgage to Edward S. Brayton for $400, covering a portion of said premises, and also the said judgment in favor of the Bronners. And the said Martha A. Loomis was informed by the secretary of the said savings bank, that both of the said incumbrances must be canceled of record before the said further loan of $1,000 could be made on said real estate. And an arrangement was then made between said Martha A. Loomis and the said savings bank, by which the savings bank was author-ized to pay out of the said $1,000 the amount necessary to pay the Brayton mortgage. And Mrs. Loomis informing the savings bank that the judgment had been appealed from and duly secured on appeal, she agreed that she would procure the necessary order of the court exempting the lands — 182 acres embraced in the

$3,000 mortgage, from the lien and operation of the said judgment, and in April, 1877, the secretary of the savings bank was informed that the necessary order had been obtained for the purpose of exempting such lands, and was furnished with a copy of the order of this court, made at a Special Term held at the court house in Rome in and for Oneida county, on the 27th day of March, 1877, whereupon the savings bank advanced the money and paid up the Brayton mortgage, and paid over the balance of the $1,000 to Mrs. Loomis and took to secure the repayment thereof the bond and mortgage in question.

The judgment in favor of the Bronners was affirmed on the appeal. The order of the 27th of March, 1877, which was made by Mr. Justice Hardin, then holding the Oneida Special Term, was made by default, and exempted the property embraced in the mortgage from the lien of the said judgment, and was made upon proof of the service of notice of said motion upon the attorneys for the plaintiff, and also upon the sureties in the undertaking on appeal. The order appealed from was made upon a motion in behalf of the plaintiffs, the Bronners to vacate and set aside the order of the 27th of March, 1877, for irregularity. Most of the various grounds upon which the irregularity of the order of the 27th of March, 1877, are alleged may probably be satisfactorily answered. The fifth ground upon which such irregularity is alleged, however, presents a more difficult question. It is in substance that the order releasing said real estate from the lien of the said judgment has never been entered in the proper clerk's office, to wit: In the office of the clerk of the county of Onondaga, which was the county specified in the complaint as the place for the trial of the said action.

By the rules of the Supreme Court in force when the order of March 27, 1877, was made, any Special Term order in an action, and the papers upon which it was founded, must be entered and filed in the office of the clerk of the county specified in the complaint as the place of trial of the action, and by rule fourth it was provided, in substance, that it shall be the duty of the party prevailing on a motion, to cause the affidavits, papers and order granted upon a non-enumerated motion to be filed, and the proper order entered in the proper county within ten days thereafter, or

he shall lose the benefit of said order and the same shall be deemed vacated. It appears by the certificate of the clerk of the county of Onondaga that the papers on which the said order was granted have never been filed, or the order entered in his office.

It does not appear from the papers precisely when the savings bank received the bond and mortgage for $1,000, or when they advanced the consideration therefor, suffice it to say, however, that from other facts which do appear in the affidavit of the secretary that the bond and mortgage could not have taken effect until more than ten days had elapsed after the entry of the order of March 27, 1877, so that according to the practice of the court, the order of the 27th of March, 1877, was in effect vacated by non-compliance with the rule, as to the entry thereof in Onondaga county, at the time when the savings bank took the mortgage and advanced the consideration therefor.

Section 282 of the Code of Procedure under which the order of the 27th of March, 1877, was made, provides that upon the making of such order and a certain entry on the docket of the judgment, the judgment shall during the pendency of such appeal cease to be a lien upon the property so exempted, as against purchasers and mortgagees in good faith. It may be conceded that it is not necessary that a mortgagee, in order to be within the protection of the statute, should show that he had parted with value on the faith of the mortgage. (*Union Dime Savings Ins. v. Duryea et al.*, 67 N. Y., 84.)

What then is the meaning of "*good faith*" as used in this statute ? It can only mean that the mortgagee must have taken his mortgage without any design to defraud the plaintiffs in the judgment, or anybody else, and upon some *bona fide* consideration either present or past. In such a case he can avail himself of the protection of the statute, provided that a court having jurisdiction has made the necessary order under section 282. But in this case the order had become vacated before the savings bank took the mortgage. The order in accordance with the practice of the court was, in effect, conditional upon the entry in the proper county within ten days after it was granted. The counsel for the savings bank claims that it was not his duty to see that the order was duly entered. Perhaps not. But when he assumes to

act upon the supposition that it was a valid order he becomes responsible to show, in a case where its validity is drawn in question, all the facts which constitute a prerequisite to such validity. It would not be claimed that if the order had been made without jurisdiction, as, for instance, without any notice to the plaintiff in the judgment, that the mortgagee could rely upon it as a valid order, and we think the requisition that the order to be of any effect must be entered within ten days in the proper county, operated *per se* as a *vacatur* of the order in case the ten days had expired without such entry. (*Sage* v. *Mosher*, 17 How., 371; *Scudder* v. *Snow*, 29 How., 95.) At all events the practice was irregular, and it is not shown that the practice was mistaken, or that the non-entry of the order in the proper county was occasioned by any inadvertence or mistake. The secretary and counsel for the savings bank must have known that the place of trial was the county of Onondaga, for that would appear on the transcript of the original docket which was filed in Oneida county.

Whatever may have been the rights of the savings bank if it or its attorney had acted on the order and received the bond and mortgage within the ten days after the order was made, we think that after knowing that the ten days had expired before it had acted on the order it could not set it up as a valid and existing order, without an application to the court, founded on some good reasons, and a notice to the plaintiffs, to allow the order to be entered *nunc pro tunc;* and, therefore, we think that the order appealed from, so far as it preserves the priority of the savings bank mortgage for $1,000 over the plaintiffs' judgment, was erroneous.

The provision of the statute under which the order of March 27, 1877, was made is that the entry shall be made " on the docket of such judgment," without specifying which docket of the judgment is referred to. The judgment roll in this case was filed, and the judgment docketed in Onondaga county, as by law was required, and afterwards by the filing of the transcript of the " original docket," in the county of Oneida. It happens in this case that the land ordered to be released from the lien of the judgment is situated in the county of Oneida, but the motion to release the lands from the lien of the judgment might have been made in any one of the several counties in the fifth judicial district. Suppose the motion

of the 27th of March, 1877, had been made in the county of Oswego, in which the judgment had also been docketed under a transcript from Onondaga, would the entry on the docket in Oswego county be a sufficient compliance with the statute? This presents a question which, in the view we take of the case, it is not necessary to decide, but which may arise in any such case unless the entry is required to be made on the "original docket," in the office where the order and the papers whereon it is founded are required to be filed and entered. And this circumstance furnishes an additional reason why the order should be entered in the county where the judgment is originally docketed.

The savings bank claims that to the extent of the amount paid to take up the Brayton mortgage, which was a lien prior to the judgment, it is entitled to be protected. This may be so. It may be that in an action commenced for that purpose the court would resuscitate the Brayton mortgage, and hold the savings bank entitled to be subrogated to the rights which Brayton had under that mortgage at the time when the same was paid by the savings bank; but this relief, if the savings bank would be entitled to it in a proper proceeding commenced to assert its claims in that behalf, cannot be granted in a proceeding under section 282 of the Code of Procedure.

That portion of the order appealed from which excepts the mortgage for $1,000 owned by the Rome Savings Bank from the operation of the order, is reversed with ten dollars, costs and disbursements, without prejudice to an action by the Rome Savings Bank to revive the Brayton mortgage.

SMITH, J., concurred; HARDIN, J., not voting.

That part of the order of the Oswego Special Term which is appealed from reversed, with ten dollars costs and disbursements, without prejudice to an action by the Rome Savings Bank to revive the Brayton mortgage.