◼ NANNETTE SLOAN, Appellant, v STARBARE II PARTNERS, L.P., Respondent. [681 NYS2d 267] —Judgment (denominated an order), Supreme Court, New York County (Richard Braun, J.), entered September 10, 1997, which dismissed the petition, unanimously reversed, on the law, without costs, and the petition reinstated.

This special proceeding to determine petitioner's rights in an art collection seized by the Sheriff to satisfy a judgment against petitioner's husband, Stephen Sloan, involves art works valued at approximately $500,000, collected by petitioner and her husband over the course of their 40-year marriage. Mr. Sloan and his business, Stephen Sloan Marine Corp., had guaranteed a mortgage loan to Sloan Marine Associates (the Borrower) and on March 23, 1993, the lender, National Westminster Bank (NatWest), obtained a $10 million judgment against Sloan and his business on their guarantees. Respondent Starbare is NatWest's assignee.

Starbare obtained an order granting summary judgment against Mr. Sloan, directing that the art collection at the Sloans' Park Avenue apartment be delivered to the Sheriff. The Sheriff scheduled the sale of the art works for January 28, 1997, whereupon petitioner commenced the instant proceeding pursuant to CPLR 5239 seeking recognition of her one-half interest in the art.

The motion court erred in dismissing the petition. Although Starbare's rights in relation to Mr. Sloan have been litigated (*Starbare II Partners v Sloan*, 216 AD2d 238), petitioner was not a party to that action.

Petitioner asserts that the art was purchased by her and her husband to decorate their home during the course of their 40-year marriage, and that it was paid for sometimes by her, sometimes by her husband, and sometimes by both of them, but always with the intention that the art be owned jointly by them. She further explains that while some art work was sold and the proceeds paid to her husband so that he could use the

funds in his business to avoid bankruptcy, when the business eventually became bankrupt, she and her husband agreed that their art collection could be conditionally assigned as part of a plan to resolve the bankruptcy. Nevertheless, it was always understood that if the plan was not accepted, which it was not, the art would remain in their home as joint property. She otherwise played no part in the bankruptcy proceeding, never saw the papers, and was never asked by NatWest, Starbare or Mr. Sloan's bankruptcy lawyers whether she owned the art together with her husband.

The absence of documentation backing up petitioner's claim to a one-half interest in the art works does not defeat her claim. Our Domestic Relations Law provides that personal property acquired by either spouse during a marriage is jointly owned marital property unless the spouses have otherwise agreed (*see*, Domestic Relations Law § 236 [B] [1] [c]; [3]). Nor does that statute represent a change in the law. "Household property obtained for general use of husband and wife is deemed to be the property of both of them in the absence of proof of a different intent" (*Brenner v Legum*, 46 Misc 2d 552, 553). Whether the husband or the wife brings to or buys property for the marital home, " 'the only inference which can be drawn, in the absence of affirmative evidence of a different intent, is that all the furniture and furnishings so supplied to the home are so supplied for the joint use, comfort and benefit of both husband and wife, and that neither spouse thereby acquires [exclusive title or ownership]' " (*Tausik v Tausik*, 38 Misc 2d 11, 20, quoting *Plohn v Plohn*, 206 Misc 969, *mod on other grounds* 1 AD2d 824). That Mr. Sloan may have paid for certain art, sold it, or obtained funds from its sale was only a factor to be weighed by the trier of fact, since either party may make a disposition of joint property with the consent of the co-owner (*see, Matter of Kleinberg v Heller*, 38 NY2d 836, 842-843 [Fuchsberg, J., concurring]; *Matter of Granwell*, 20 NY2d 91, 95-96).

Petitioner's failure to make a claim of an ownership interest in the art collection in court when the turnover order was entered, or when the Sheriff came to seize the property, did not constitute a waiver of her rights, or an admission, or some undefined legal neglect, since the correct procedure for asserting rights in property that is ordered sold by the Sheriff is to bring a CPLR 5239 proceeding any time prior to the application of property to satisfaction of the judgment (*see, Jones v Knowlton*, 199 AD2d 871). The statute so provides, and since the Sheriff must be served, the claim could not be made until *after* the property has been seized for sale. As a joint owner,

petitioner had no power to prevent the execution and levy on the art work, as all she had was a "moiety" or one-half interest in the proceeds (*see, Matter of Granwell, supra,* 20 NY2d, at 95).

The excerpt of testimony given by petitioner in 1995 supplementary proceedings, upon which Starbare and the motion court relied, does not, when read in its full context, contradict her assertions here. Nor was there any inconsistency in petitioner's claims in the context of this proceeding; she consistently and properly claimed that the art work was acquired during the marriage with joint funds that she and her husband intended would be jointly owned. Concur—Ellerin, J. P., Williams, Mazzarelli and Saxe, JJ.